IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID JOHNSON, individually and on behalf of a class of similarly situated individuals, | ) ) ) | |
| *Plaintiff,* | ) ) | No. 17 C 08858 |
| v. | ) ) | Hon. Virginia M. Kendall |
| UNITED AIR LINES, INC., a Delaware corporation, and UNITED CONTINENTAL HOLDINGS, INC., a Delaware corporation, | ) ) ) ) | |
| *Defendants.* | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Defendants United Air Lines, Inc., and United Continental Holdings, Inc., (collectively "United") utilized Plaintiff David Johnson's fingerprints to track when he signed in and out of work as a baggage handler at O'Hare International Airport. Johnson sued United in state court on behalf of himself and others similarly situated for violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14 §§ 1, *et seq*. United removed the case to federal court and has since filed a Motion to Dismiss or Strike the Class Allegations. *See* (Dkt. No. 19). Also pending is a Motion to Remand the matter to state court filed by Johnson. *See* (Dkt. No. 23). The Court grants the Motion to Dismiss. [19.] Johnson's Motion to Remand is dismissed as moot. [23.]

**BACKGROUND**

Johnson is an Illinois citizen who worked as a baggage handler for United at O'Hare International Airport in Chicago. (Dkt. No. 1, ¶ 18; Dkt. No. 1-1, at 33.) Both United defendants are citizens of Delaware and Illinois. (Dkt. No. 1, ¶¶ 20-21.) The International Association of Machinists and Aerospace Workers ("IAMAW") represents Johnson and other

1

United employees for establishing a collective bargaining agreement with United. (Dkt. No. 1-2, at Ex. 2) (Decl. of Dortoa Karpierz).

The collective bargaining agreement ("CBA"), which both parties attached to their pleadings, governs the terms and conditions of employment between Johnson and United. *See* (Dkt. No 1-2, at 6-13; Dkt. No. 20-2, Ex. A.) The CBA utilizes a three-step grievance and arbitration process in circumstances where an employee "believes that the Company has … interpreted or applied the Agreement [improperly], [then] the complaint should be settled at the lowest possible level based upon the facts and common sense under the [set forth] procedures." (Dkt. No. 1-2, at 9.) The CBA also provides that "[United] has the sole and exclusive right to manage, operate, and maintain the efficiency of the business and working forces," including the right to "maintain discipline and efficiency in the Company's facilities" and "to determine the type and location of facilities [and] equipment … the Company will utilize." *See* (Dkt. No. 20-1, Ex. A at 14) (Art. 10 of the CBA). The CBA further states that if the grievance procedure does not result in settlement then the matter goes to arbitration before the System Board of Adjustment. (Dkt. No. 1-2, at 11.)

Under the auspices of the CBA, United uses fingerprint technology as a means for its employees to "clock-in" and "clock-out" of work every day, and so they require fingerprint scans as a condition of employment. (Dkt. No. 1-1, at ¶ 21.) When employees arrive for work they swipe their fingerprint as a means of clocking in and out and for timekeeping purposes. *Id.* ¶¶ 28-31. In collecting the fingerprint data of its employees, United did not obtain employee consent for any transmission to third parties of their employees' biometric information. *Id.* ¶¶ 32-34.

Johnson objects to United's collection and use of biometric information so he filed this lawsuit in state court alleging a violation of BIPA on behalf of a class of plaintiffs all of whom had their fingerprints scanned and stored by United for the purpose of timekeeping. *See generally* (Dkt. No. 1-1) (Plaintiff's Motion for Class Certification and Complaint filed in state court). United removed the matter to the United States District Court for the Northern District of Illinois alleging federal question jurisdiction pursuant to the Railway Labor Act; and because the Class Action Fairness Act permits removal to federal court of any class action suit where there exists minimal diversity. (Dkt. No. 1, at 3-9.) United now moves for dismissal of the complaint for lack of subject matter jurisdiction because the RLA preempts resolution of the BIPA claim. (Dkt. No. 20.) Johnson disputes removal of this lawsuit to federal court and requests that the Court remand the matter back to the Circuit Court of Cook County, Illinois. (Dkt. No. 23.)

## LEGAL STANDARD

Before the Court can review any substantive arguments, it must first examine the basis for federal jurisdiction. *Aaron v. Mahl*, 550 F.3d. 659, 662 (7th Cir. 2008); *State of Illinois v. City of Chicago*, 137 F.3d 474, 478 (7th Cir. 1998) ("[s]ubject-matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction it must proceed no further"). When reviewing for dismissal based on lack of subject matter jurisdiction a district court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Evers v. Astrue*, 546 F.3d 651 (7th Cir. 2008). However, where the complaint is facially sufficient "but external facts call the court's jurisdiction into question, [the district court] 'may look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017) (quoting *Apex*

*Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009). The plaintiff bears the burden of establishing that subject matter jurisdiction exists in the face of a 12(b)(1) motion. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588-89 (7th Cir. 2014).

## DISCUSSION

*1. RLA Preemption*

Congress passed the Railway Labor Act ("RLA") to "promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994) (citing *Atchison, T. & S.F.R. Co. v. Buell*, 480 U.S. 557, 562 (1987). In doing so, the RLA establishes "a mandatory arbitral mechanism for 'the prompt and orderly settlement'" of major and minor disputes. *Id.*; *see also* 45 U.S.C. § 151a. Major disputes are those that create contractual rights, such as "rates of pay, rules or working conditions," while minor disputes "grow out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." *Hawaiian*, 512 U.S. at 252-53.

United argues that Johnson's BIPA claim is a "minor dispute" of the CBA between United and the IAMAW under the RLA, which therefore preempts the BIPA claim and warrants dismissal. (Dkt. No. 20, at 5-9.) A plaintiff's claim is properly characterized as a minor dispute (and is therefore subject to mandatory and exclusive arbitration under the RLA) when the resolution of the plaintiff's claim requires interpretation of the CBA. *See Coker v. Trans World Airlines, Inc.*, 165 F.3d 579, 583 (7th Cir. 1999) (stating that "the distinguishing feature of a minor dispute is that the dispute can be conclusively resolved by interpreting the existing CBA."). "All minor disputes must be adjudicated under RLA mechanisms, which include an employer's internal dispute-resolution procedures and an adjustment board established by the

4

unions and the employer." *Brown v. Ill. Cent. R.R. Co.*, 254 F.3d 654, 658 (7th Cir. 2001) (quoting *Monroe v. Missouri Pac. R.R. Co.*, 115 F.3d 514, 516 (7th Cir. 1997) (internal quotations omitted). Success on this theory requires that United show that a claim under BIPA is impossible because the RLA "so occupies the field that state law is 'completely preempted' and that any claim must rest on federal law." *Hughes v. United Air Lines, Inc.*, 634 F.3d 391, 393 (7th Cir. 2011). "'Complete preemption' applies to subjects over which federal law is so pervasive that it is impossible to make out a state-law claim, no matter how careful the pleading" and generally permits removal, whereas ordinary preemption is a defense that must be pleaded and established in the court where the litigation began. *Id.* If there is no basis for "complete preemption," then removal is only warranted if the defendant can show another basis for subject matter jurisdiction such as if the parties are completely diverse pursuant to §1332. *Id.*

Applied here, the issue raised by Johnson is a minor dispute subject to preemption under the RLA because there is no way for the Plaintiff to pursue a BIPA claim without interpreting the existing CBA between United and IAMAW. The CBA included explicit terms, which the parties negotiated at arm's length, including United as having the "sole and exclusive right to manage, operate, and maintain the efficiency of the business and working forces," and including the ability to "maintain discipline and efficiency in the Company's facilities." *See* (Dkt. No. 20, at 7) (citing to the CBA). In exercising these CBA rights, United opted for a timekeeping system utilizing fingerprint technology that they implemented over five years ago. *Id.* Thus, any challenge to the use of fingerprints as a means of managing the efficiency of its business and work forces at its Company locations would at the very least require interpretation of the CBA to determine whether it falls within its scope, and further the grievance process spelled out within Articles 9 and 10. Even if Johnson's claim is grounded in some other source – such as state law

5

– it "will be preempted if it cannot be adjudicated without interpreting the CBA, or if it can be 'conclusively adjudicated' by interpreting the CBA." *Brown*, 254 F.3d at 658 (quoting *Hawaiian Airlines*, 512 U.S. at 261-62). That is clearly the case here where Johnson's claim requires interpretation of the CBA to determine whether United has the authority to use a particular timekeeping system for employees. Thus, whether the use of fingerprint technology for timekeeping purposes violates BIPA inherently requires interpretation of the permissible scope of use within the CBA entered into between United and IAMAW. The matter therefore requires arbitration proceedings established within the CBA as established in compliance with the RLA.

Johnson further argues that the BIPA claim should proceed because United failed to obtain a written release as required by the statute mandating consent from the employees before using their biometric information. *See* 740 ILCS 14 §§ 10, 15 (defining "written release" and providing that an entity must obtain a written release prior to using biometric identifiers); (Dkt. No. 1-1, at ¶¶ 32-34). However, this argument also fails on the ground that interpreting whether this occurred or whether United complied with such a provision would require interpretation of the CBA between United and IAMAW. Specifically, the CBA provides that employees who have completed their probationary period "will not be disciplined or discharged without 'just cause.'" (Dkt. 20-1, Ex. A, at 2.) In contrast, BIPA requires a written release "executed by the subject of the biometric identifier" prior to its use. 740 ILCS 14 § 15. As these provisions vary, a court reviewing Plaintiff's claim for a violation of BIPA would be required to look to the CBA and its terms to determine whether the "just cause" provision or any other applicable provision of the CBA directly contradicts the requirements under BIPA. As such, the RLA preempts the action and mandates use of the arbitration provisions set forth under the CBA and in doing so strips this Court of subject matter jurisdiction. *See Brown*, 254 F.3d at 668 (7th Cir. 2001)

(claim brought under an independent federal statute is precluded by the RLA if the issue can be disposed of by interpreting the CBA); *Wisc. Cent. v. Shannon*, 539 F.3d 751, 757 (7th Cir. 2008) (preemption occurs where "the success of the claim is dependent upon an interpretation of the [CBA] terms); *Grimes v. CSX Transp., Inc.*, 338 Fed. Appx. 522, 524 (7th Cir. 2009) (the RLA precludes a district court from adjudicating "even a dispute ostensibly based on an independent source of federal or state law if 'the interpretation of some provisions' of the labor agreement 'could be dispositive of the plaintiff's claim.'").

    2. *Article III Standing*

Not only does preemption support dismissal in the underlying matter, but so too does the issue of Article III standing. Although the Defendant fails to argue whether Johnson suffered any actual or concrete injury, the Court is obligated to review for lack of standing as an important component of subject-matter jurisdiction. *See United States v. $304,980.00 in U.S. Currency*, 732 F.3d 812, 817 (7th Cir. 2013). And although injuries may be intangible harms, or purely statutory procedural harms, the harm alleged by Johnson fails to rise to the level of an injury-in-fact without more. *See Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 886 (7th Cir. 2017) (injury-in-fact can derive from intangible harms); *see also Spokeo v. Robbins*, 136 S. Ct. 1540, 1547 (2016) (a statutory harm can be the source of an injury-in-fact). This is because the legislative intent underscoring the passage of BIPA was to protect "[t]he public welfare, security, and safety" of an individual's biometric information through "regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." *See Aguilar v. Rexnord LLC*, No. 17 CV 9019, 2018 WL 3239715, at *3 (N.D. Ill. 2018) (Shah, J.) (citing 740 ILCS 14 § 5(g)).

7

As pled, the core of Johnson's complaint and request for class certification is that United failed "to obtain consent from their workers prior to capturing and collecting their biometric information and similarly failed to provide workers and the public with a retention schedule and deletion politics which detailed how and when Defendants would retain and then destroy their workers' biometric information and/or biometric identifiers." *See* (Dkt. No. 1-1, at 4) (citing Plaintiff's Complaint). However "notice and consent violations do not without more create a risk of disclosure." *Id.*; *see also Goings v. UGN, Inc.*, No. 17 CV 9340, 2018 WL 2966970, at *4 (N.D. Ill.) (Bucklo, J.) (dismissing for lack of standing); *cf. Dixon v. Washington and Jane Smith Cmty.-Beverly*, No. 17 CV 8033, 2018 WL 2445292, at *11 (N.D. Ill. 2018) (Kennelly, J.) (establishing standing based on plaintiff's ability to allege more than purely statutory violations of BIPA). Johnson alleges a statutory violation based entirely on United's failure to obtain consent but provides no factual basis to show there was any subsequent disclosure that would form the injury. This is further supported by his class definition, "[a]ll individuals whose biometrics were captured, collected, obtained, stored or used by Defendants any time within the applicable limitations period," which provides no essence of disclosure. *See* (Dkt. No. 1-1, at 5). The facts here are much more aligned with those found in *Aguilar* and *Goings* where the plaintiff alleges only a statutory violation for notice and consent violations of the statute and nothing more. As such, the Court would dismiss for lack of standing were the matter not preempted by the RLA in the first place.

## CONCLUSION

For the reasons set forth above, United's Motion to Dismiss for lack of subject matter jurisdiction is granted, [19], and Johnson's complaint is dismissed without prejudice. *See Murray v. Conseco, Inc.*, 467 F.3d 602, 605 (7th Cir. 2006) ("No jurisdiction and with prejudice

are mutually exclusive."). The Motion to Remand is dismissed as moot. [23.] The Court will enter final judgment and close the case.

_____
Hon. Virginia M. Kendall
United States District Judge

Date: July 30, 2018

9